Robert S. FRENCH et al., Plaintiffs,

v.

Alice V. CASTO, Margaret Casto Phillips and John Masters Phillips, Defendants.

Civ. A. No. 793.

United States District Court
S. D. West Virginia.

April 6, 1956.

McDaniel Purcell, Huntington, W. Va., for plaintiff.

Taylor Vinson, and Scherr, Meek & Vinson, Huntington, W. Va., for defendants.

HARRY E. WATKINS, District Judge.

This is an action for a declaratory judgment wherein the plaintiffs, heirs at law of Blanche Shaul, deceased, seek to be adjudicated the owners of an undivided one-half interest in the Buckeye Apartments in Huntington, W. Va. Plaintiffs base their claim on two deeds, each dated May 5, 1924. The defendants base their title on the wills of Blanche Shaul and Howard M. Shaul, husband and wife. The other one-half interest in the property is not in dispute, both sides admitting that it belongs to the heirs at law of Howard M. Shaul.

### Findings of Fact.

Some time prior to 1924 Howard M. Shaul acquired title to the property in question. Under the West Virginia law in 1924, a man could not convey good title to real estate directly to his wife. In order to provide a home for his wife as long as she should live, Shaul followed the practice in West Virginia under the then existing law and by deed dated May 5, 1924 conveyed the property to a third party, "as Trustee, with full and complete power in said Trustee to convey by proper deed as Trustee, a life estate in and to" the property. The deed was very short and no mention was made of the remainder.

By a second deed, dated the same day, the trustee conveyed to Blanche Shaul, the wife, a life estate in the property as he was authorized to do by the first deed.

The granting clause states that the trustee "does hereby grant and convey * * * a life estate" to Blanche Shaul "being the life estate in the same property conveyed to the said Lace Marcum as Trustee, by H. M. Shaul, and Blanche Shaul, his wife, by deed of even date herewith". Had the deed stopped there, we would have no suit. But for some unknown reason the trustee also undertook to dispose of the remainder. After granting a life estate only the next paragraph provides:

"It is the purpose of this deed to vest the life estate in all that certain property above described, in the said Blanche Shaul, and at her death the remainder to revert back to H. M. Shaul, her husband, if he survive her, and if he does not survive her, then the remainder in said property shall be divided equally between the heirs of the said H. M. Shaul, on the one side, and the heirs at law of the said Blanche Shaul on the other, that is one-half of said remainder to go to the heirs at law of the said H. M. Shaul, and the other one-half of the remainder to the heirs at law of the said Blanche Shaul."

It is around this paragraph in the deed from the trustee to Blanche Shaul that the controversy centers. The plaintiffs are heirs at law of Blanche Shaul and contend that the paragraph quoted above gave them a contingent remainder in one-half of the property. The defend-

ants say that this paragraph attempting to convey the remainder was null and void and of no effect because the trustee had no right to convey the same and no right or interest in the remainder which was then vested in Howard M. Shaul.

On April 2, 1949, Howard M. Shaul died testate, having executed his will on July 22, 1935, which was duly probated in Cabell County, West Virginia. By the terms of his will he left "all the estate of every kind and character, real, personal and mixed, wheresoever situate of which I may die seized and possessed, to belong to her (Blanche Shaul) absolutely".

Blanche Shaul died testate on December 5, 1953, having executed her will on February 4, 1953, which was duly probated in Cabell County, West Virginia. By the terms of her will, after a certain bequest, her estate, real, personal and mixed, was to be divided into two equal parts. One part went to the heirs at law of Howard M. Shaul, her husband, and the other part went to the defendants, Alice V. Casto and Margaret Casto Phillips. Defendants base their title upon these wills. They say that the second deed from the trustee to the wife, Blanche Shaul, granted only a life estate because the trustee had no greater estate to grant, and that his attempt to convey the remainder was null and void and of no effect as to such remainder; that the remainder continued in Howard M. Shaul until his death, when it passed by his will to his wife, which then gave her the remainder plus her life estate, or the fee; and that the will of Blanche Shaul gave them a one-half interest in the property, and the other half to the heirs of her husband, Howard M. Shaul.

Plaintiffs contend that Blanche Shaul and Howard M. Shaul intended to convey the entire fee by the 1924 deeds; that the omission of the remainder clause in the first deed to the trustee was an oversight, and the two deeds should be read together as one instrument to show the real intent of the parties; that the second deed expresses their actual intent, that is, to convey the life estate to Blanche Shaul and the remainder to go equally to the heirs at law of each; that it was the intent of Howard M. Shaul when making the first deed to the trustee to then and there divest himself of not only a life estate but the entire fee; that when Howard M. Shaul died leaving his wife surviving him the contingent remainder granted by the trustee in the second deed became a vested remainder, whereby the wife then owned a life estate only with one-half of the remainder in her heirs and the other one-half of the remainder vesting in the heirs of her husband; that upon the death of Blanche Shaul the fee to one-half of this property vested in the plaintiffs as heirs at law of Blanche Shaul and the other half of the fee vested in the heirs of Howard M. Shaul. The plaintiffs say that the wills of the Shauls did not affect the title to the property; that when Howard Shaul died he had no right, title or interest in the property to convey, and that Blanche Shaul never had more than a life estate; that when she died title to one-half of the property was already in her heirs by reason of the trustee deed and title to the other one-half of the property was already in his heirs by reason of the trustee deed.

Blanche Shaul owned other personal property, stocks and bonds, and the right of defendants to take such property under the will of Blanche Shaul was never questioned, and the estate has been settled accordingly. It is only by reason of the provision in the second deed which relates to this particular property, that title to this property is in dispute.

It was not until some time in 1955 that claim was made by the plaintiffs to one-half of this property. At that time the defendants and the heirs of Howard M. Shaul decided to sell the property. Attorneys for the purchaser discovered the provision in the second deed relating to the remainder, which, in their opinion, cast a cloud upon the title to the one-half interest. They requested that a quitclaim deed be secured from the plaintiffs herein. When approached, the plaintiffs

refused to sign a quit-claim deed and thereafter instituted this action.

The property consisted of an apartment building containing four apartments, in one of which the Shauls lived. Kemper Royal, a servant of the Shauls, stated that Shaul had told him at one time that after the death of himself and his wife the apartments would go equally to his relatives and her relatives. Plaintiffs also introduced evidence to show that the initials "H. M. S." appear on the margin of the book at the office of the clerk of the county court where those deeds were recorded, and that it has been the practice of that office to put the initials of the person to whom the original deeds are mailed on the margin of the recorded deed. Outside of the deeds themselves, there is little evidence to show what happened or what was intended. The other evidence offered by both sides was either remote or indefinite.

All the persons having any connection with the transactions are dead, except the notary public who took the acknowledgment to both deeds on June 25, 1924, and he testified that he had no independent recollection of the transaction. The original deeds were recorded but cannot be found. The stenographer who did the secretarial work or the person or persons who prepared the deeds cannot be identified. All the files of Lace Marcum, the trustee, who was a practicing attorney in Huntington and died in 1932, have been lost. Therefore, the only evidence of the transaction is the recorded copies of the deeds.

### Conclusions of Law.

■ Plaintiffs rely upon the general rule of construction that when separate deeds or instruments are executed at the same time and in relation to the same subject matter, between the same parties, and are made as parts of substantially the same transaction, then they may be taken together and construed as one instrument, and various other rules of construction under which the courts in cases where the language used is ambiguous have looked for the intent of the parties and carried out that intent.

Like most general rules of law, these rules of construction are subject to certain exceptions. In 26 C.J.S., Deeds, § 91, it is stated that even where two instruments are executed at the same time and refer to the same subject matter, they cannot be construed together as one instrument or as constituting parts of one transaction where they are not between the same parties. Here the two deeds were not between the same parties. It is very conceivable that Shaul, having completed his end of the transaction, went on about his business and never saw or read the trustee's deed to Blanche Shaul. While the deeds are both dated May 5, 1924, it does not appear that they were prepared or signed at the same time or on the same day, since they were not acknowledged until more than a month later. The certificate of the notary shows only that the signatures were acknowledged on June 25, 1924. The second deed could have been prepared and signed a month or more after the first deed. We do not know who prepared or recorded the deeds, or when they were prepared or signed.

A reading of the deeds would indicate that neither deed was prepared by a lawyer. For example, in the second deed, the granting clause only grants a life estate, and to make sure that there is no misunderstanding on the part of the grantor trustee as to the estate or interest which he possesses, the granting clause is followed by the words: "being the life estate in the same property conveyed to the said Lace Marcum as trustee, by H. M. Shaul, and Blanche Shaul, his wife, by deed of even date herewith". With the use of this language it is difficult to see how there could be any misunderstanding on the part of the trustee as to the title actually conveyed to him or intended to be conveyed to him by Shaul. This would be especially true if Marcum, the trustee, wrote the deed. If the trustee thought that the two deeds

were prepared, signed, executed and delivered as a single transaction with intent on the part of Shaul to convey the entire fee when in fact he had only conveyed a life estate, it would have been easy for the trustee to have corrected the matter by re-writing the first deed or by having Shaul join with him in executing the second deed. Instead of doing this the writer follows with the paragraph quoted above, upon which plaintiffs base their claim. This paragraph does not contain a granting clause but attempts to explain the "purpose of this deed". There is nothing whatsoever to indicate that Shaul was ever a party to the purpose therein expressed.

Whatever may have happened, the language of the first deed is clear and unambiguous, and when viewed as a separate transaction between Howard M. Shaul and Marcum, Trustee, it needs no explanatory construction.

It was held in Bruen v. Thaxton, 126 W.Va. 330, 28 S.E.2d 59, at page 64:

"There being no patent ambiguity in the reservation, and no latent ambiguity alleged in the bill, there would seem to be no place for the application of rules of interpretation and construction, such as might be applied to an ambiguous writing. 'If the language of a written agreement is on its face ambiguous, the court will look at the surrounding circumstances, at the situation of the parties, and the subject-matter of the contract, and at acts done by the parties under it, for aid in giving a construction to its language, but not to the verbal declaration of the parties.' [Citing case.] But where no ambiguity exists, a deed or other contract will be construed from the language used therein. [Citing cases.] The duty of the courts to attempt to arrive at the intention of the parties is clear. See Virginia and West Virginia Digest, Volume 2, page 896, for cases cited on this point. In such case the intention of the parties must be determined by giving to the language employed its plain and ordinary meaning. 'It is the safest and best mode of construction to give words free from ambiguity their plain and ordinary meaning.' * * * But 'No addition to the terms of a written contract, or transposition or modification thereof, can be made by construction, unless it has foundation in the written words of the paper or in a reasonable and fair implication arising out of such words, or some provision thereof or purpose expressed by it.' Leckie v. Bray, 91 W.Va. 456, 113 S.E. 746."

The rule as to the trustee's authority is stated in Diehl v. Cotts, 48 W. Va. 255, 37 S.E. 546, at page 547, wherein the court said that where the deed sets up a specific trust in the trustee he cannot modify or alter it, but must follow it, and he can only do with the trust property what the deed authorizes. In the case at bar the trustee was given only the power to convey a life estate, and this in clear and explicit terms.

In the case of Woodbridge v. Woodbridge, 88 W.Va. 187, 106 S.E. 437, it was contended that a husband took a fee simple estate under his wife's will. Judge Ritz, in the opinion of the court, 106 S.E. at page 439, said:

"* * *, if she had the intention of giving to her husband the absolute title to her property we cannot conceive for one minute why she ever resorted to the use of the language she did. One of most ordinary intelligence, having such an intention would simply have said that the purpose was to give the property to the object of her bounty without any limitation."

In view of the facts as disclosed by the recorded instruments and the authorities cited and discussed herein it is concluded that the defendants, Alice V. Casto and Margaret Casto Phillips, have a good indefeasible title in and to an undivided one-half interest in this property.

Had it been the intent of Howard M. Shaul to convey a fee simple title to Marcum, Trustee, the deed would not have been worded so as to restrict the interest conveyed to the power to merely convey a life estate. The words used in the first deed are clear, simple and unambiguous. They are not susceptible to any other meaning. There was no habendum clause in the deed. Had there been an habendum clause in the deed purporting to convey a greater estate than a life estate, perhaps under such circumstances the language in the granting clause might have been considered as ambiguous with the possibility that the deed conveyed a greater estate. This was not the case and the first deed should be considered as a completed instrument conveying only what it purported to convey, —a life estate.

If it was the grantor's intention to convey more than a life estate, he could have accomplished that purpose by joining in and signing the second deed along with the trustee. He did not do so and there is no indication in the second deed that there was any idea or intention that he was to sign it.

In order to sustain plaintiffs' position, the court would have to write a new contract or deed for the parties, changing and adding to the first deed wording which would have the effect of conveying a greater estate than was actually conveyed or intended to be conveyed. If the two deeds are considered together as constituting a single transaction, and if they create an ambiguity as to the intent of Shaul, the plaintiffs have wholly failed to show that it was his intent to authorize the trustee to convey more than a life estate in his property. The defendants Alice V. Casto and Margaret Casto Phillips are now the owners of an undivided one-half interest in this property, and the heirs of Howard M. Shaul are the owners of the other undivided one-half interest therein.

Counsel may submit an order in accord with the views herein expressed.